UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS T. LOFTON,<br><br>   Petitioner<br><br>v.<br><br>WARDEN F. GARZA,<br><br>   Respondent. | CIVIL ACTION NO. 3:25-CV-00074<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Presently pending before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by petitioner Thomas T. Lofton ("Lofton"), an inmate confined at the United States prison Canaan, in Waymart, Pennsylvania. (Doc. 1). Lofton asserts that he is entitled to have the credits he accrued under the First Step Act ("FSA") applied to his sentence. For the reasons set forth below, the Court will dismiss the petition.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Lofton is serving an aggerate 300-month term of imprisonment imposed by the United States District Court for the Western District of New York on May 17, 2006, for robbery and firearm offenses. (Doc. 10-2, at 2). His current projected release date is October 28, 2025, through Good Conduct Time. (Doc. 10-2, at 2; Doc. 10-3).

In his § 2241 petition, Lofton contends that he is entitled to 363 days of earned time credits under the FSA, which has been denied because he has a high or medium recidivism level. (Doc. 1). Lofton acknowledges that he did not exhaust his administrative remedies because "staff advised to me that any grievance or appeal would be futile. Because by the time I hear anything I will be home." (Doc. 1, at 2).

Respondent argues that Lofton's § 2241 petition must be dismissed because: (1) he failed to exhaust his administrative remedies before filing the instant habeas petition; (2) the Bureau of Prisons ("BOP") cannot apply his FSA credits due to his high recidivism risk; and (3) BOP prerelease custody determinations are not subject to judicial review. (Doc. 10). The Court will address each argument in turn.

**II.    DISCUSSION**

   A.   EXHAUSTION OF ADMINISTRATIVE REVIEW

The instant habeas petition will *not* be dismissed based on Lofton's failure to exhaust the available administrative remedies before proceeding to federal court. Although there is no explicit statutory exhaustion requirement for § 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims. *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986)); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citations omitted). The BOP has a specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment. *See generally* 28 C.F.R. §§ 542.10-.19. That process begins with an informal request to staff and progresses to formal review by the Warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel. *See* 28 C.F.R. §§ 542.13-.15. No administrative remedy appeal is considered fully exhausted until reviewed by the General Counsel. *See* 28 C.F.R. § 542.15(a).

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review. *See Moscato*, 98 F.3d at 761. Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that consists purely of statutory construction. *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Exhaustion is likewise not required when it would be futile. *See Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982). Furthermore, a district court can conclude that an administrative process is unavailable to a habeas petitioner if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

Lofton's Administrative Remedy Generalized Retrieval report reveals that he filed 7 administrative remedies, including appeals, while in BOP custody. (Doc. 10-4). The report shows that only 2 of those 7 administrative remedies concern the computation of Lofton's state or federal sentences. (Doc. 10-4). Remedy ID 1193000-F1 concerned RRC time review. (Doc. 10-4, at 5). This Remedy was denied, appealed, and again denied on March 26, 2024. (Doc. 10-4, at 6). There is no evidence that he appealed the second denial to the General Counsel. In the petition, Lofton concedes that he did not exhaust administrative remedies with regard to his present claims stating that "staff advised to me that any grievance or appeal would be futile. Because by the time I hear anything I will be home." (Doc. 1, at 2). Likewise, his traverse alleges that "[t]he unit team told me that I need not to proce[e]d with the remedy because He (RDAP unit team) get me the relief (12 months) that I was asking for due to the amount of time I have served," but then "[m]onths later I was told by the RDAP unit team that I was only ap[p]roved for 121 days RRC Placement." (Doc. 11, at 1). He then alleges

that he spoke with the Warden, and the Warden told him that if the RDAP unit team would make a request to him that he would look into it. (Doc. 11, at 1-2). Lofton alleges that he spoke with the RDAP team about his conversation with the Warden, but was told that is not how things are done at UPS-Canaan. (Doc. 11, at 2). He then alleges that he asked the RDAP unit time to make the request to the Warden regarding the application the time credit under the FSA, but was told that "by the time you receive a response, you will be [] at the halfway house or so close to your RRC date it would be futile going through all of that." (Doc. 11, at 3-4).

Here, Lofton has repeatedly stated that the BOP employees actively encouraged him to not pursue his administrative remedies by telling him any efforts would be futile. (Doc. 1; Doc. 11). Based on these allegations, the Court concludes that administrative exhaustion is excused, and the Court will address the petition on its merits.

B. HIGH RISK RECIDIVISM

The FSA allows eligible inmates who successfully complete evidence-based recidivism reduction programs or productive activities to receive time credits to be applied toward time in pre-release custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A), (C). An inmate can earn ten (10) days of credit for every thirty (30) days of successful participation. *See id.* § 3632(d)(4)(A)(i). Furthermore, eligible inmates assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn five (5) additional days of time credit for every thirty (30) days of successful participation, for a total of fifteen (15) days' time credit per thirty (30) days' successful participation. *See id.* § 3632(d)(4)(A)(ii).

If time credits under the FSA are properly earned by an eligible inmate, application of those time credits to a prisoner's sentence is governed by 18 U.S.C. § 3624(g). Among other requirements, to be eligible for the application of his earned time credits, a prisoner must: (1) have earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment"; (2) demonstrate through periodic risk assessments a recidivism risk reduction or maintain a "minimum or low recidivism risk" during the term of imprisonment; (3) have had the remainder of his term of imprisonment computed; and, (4) as pertains to prerelease custody, have been determined under the System to be a minimum or low risk to recidivate pursuant to the last two reassessments of the prisoner or have had a petition to be transferred to prerelease custody approved by the warden of the prison. *See id.* § 3624(g)(1); *see also* 28 C.F.R. § 523.44(b), (c).

Respondent has presented evidence that Lofton currently has a high recidivism level. (Doc. 10-5, at 5). In fact, it appears that Lofton's recidivism level has increased from medium to high from December of 2018 to December 2024. (Doc. 10-5, at 5). Furthermore, Lofton freely admits that his attempts at requesting a transfer to prerelease by the warden of the prison were unsuccessful. (Doc. 11). Lofton specifically alleges that he spoke with the Warden, who told him that if the RDAP unit team made a request to him, he would look into it. (Doc. 11, at 2-3). Lofton then alleges that the RDAP unit team refused to make the request of the Warden. (Doc. 11, at 3). Therefore, Lofton does not meet the requirements to have his earned time credits applied to his sentence under 18 U.S.C. § 3624(g). Lofton has not demonstrated a reduction in his recidivism risk, nor has he obtained the approval of the Warden. As such, his petition will be dismissed.

    C.   Judicial Review of Prerelease Custody

Lofton alleges that that the Warden has not complied with the FSA and refuses to apply his 365 days of earned time credit to his sentence, RRC, or home confinement. (Doc. 1, at 6). The Court has determined that Lofton does not qualify for the application of the earned time credits towards either his sentence or pre-release custody. *See supra*. Furthermore, even if Lofton did qualify for prerelease custody under 18 U.S.C. § 3624(g), the Court does not have the authority to control the BOP's placement of inmates.

Under 18 U.S.C. § 3624(c), the BOP is authorized to consider placing an inmate in a community correctional facility for up to twelve months. However, a prisoner is neither entitled to nor guaranteed such placement for any amount of time. 18 U.S.C. § 3624(c). *See Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 240 (3d Cir. 2005). "Such placement decisions are solely within the discretion of the BOP." *Selmon v. Quay*, No. 3:21-cv-1714, 2022 WL 1271718 at *4 (M.D. Pa. Apr. 28, 2022). Therefore, the Court does not have the authority to review the BOP's decision denying Lofton's request to be placed in pre-release custody, and the petition will be dismissed.

**III.**   **Conclusion**

Based on the foregoing, the Court will dismiss the petition for writ of habeas corpus. (Doc. 1). An appropriate Order shall issue.

Dated: June 11, 2025                                *s/ Karoline Mehalchick*
                                                                         **KAROLINE MEHALCHICK**
                                                                         **United States District Judge**